WHITE, ADMR., APPELLEE, *v.* RANDOLPH ET AL., APPELLEES;
JACKSON, APPELLANT.

[Cite as White v. Randolph (1979), 59 Ohio St. 2d 6.]

(No. 79-5—Decided July 3, 1979.)

*Mr. Kelly M. Morgan* and *Mr. Joseph Waterman,* for appellant.

*Per Curiam.* This cause was certified to this court pursuant to Section 3(B)(4), Article IV of the Ohio Constitution, for resolution of the conflict between the judgment of the Court of Appeals for Franklin County, in the cause *sub judice,* and the judgment of the Court of Appeals for Cuyahoga County in *Green* v. *Woodard* (1974), 40 Ohio App. 2d 101, 318 N. E. 2d 397. The issue certified for resolution is as follows: "Whether the provisions of R. C. Chapter 2105 denying to one who is illegitimate any right to inherit from the natural father, unless the father has taken certain steps such as *marrying* the mother, *acknowledging* the child, designating the child as an heir-at-law, adoption, or making a provision in a will, are violative of equal protection as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Ohio Constitution."

The unanimous opinion of the Court of Appeals in the cause at bar was written by Judge Robert E. Holmes, now a Justice of this court. In our view, the position taken by Justice Holmes represents the correct one under the instant facts and, therefore, is incorporated at length:

"HOLMES, P. J.

"This appeal from a judgment of the Probate Division of the Franklin County Court of Common Pleas raises the

issue of the constitutionality of Ohio's descent and distribution laws as they apply to illegitimate children. Although this court has previously sustained those statutory provisions in the face of an attack grounded upon the equal protection clause in *Moore* v. *Dague* (1975), 46 Ohio App. 2d 75, the recent decision in *Trimble* v. *Gordon* (1977), 97 S. Ct. 1459, necessitates a review of our prior holding on this issue.

"The facts relevant to this appeal are in brief that Clarence Jackson died testate on January 17, 1975. His will was duly admitted to probate. The will devised all of decedent's property to his wife, but failed to provide for its disposition in the event that she did not survive him. She did not.

"The administrator then brought this action in the Common Pleas Court of Franklin County, Probate Division, for a determination of decedent's heirs-at-law, joining appellant Alice Marie Jackson, who claimed to be decedent's illegitimate daughter, as one of the defendants. Following a hearing on the matter, Judge Metcalf held, as a matter of law, that appellant was not entitled to inherit from the estate of Clarence Jackson because she introduced no evidence tending to show:

" '* * * that the decedent, alleged father, legitimized his illegitimate daughter, or formally acknowledged his daughter in Probate Court, or adopted such daughter, or provided for her in his will, or designated her as his heir at law * * *.'

"In appellant's sole assignment of error, it is alleged that:

" 'The court erred in determining that an illegitimate child may not inherit from her father's estate unless she was acknowledged to be the child of the decedent in accordance with O. R. C. 2105.18 during the decedent's lifetime.'

"In this appeal, appellant argues that the provisions of that chapter, R. C. Chapter 2105, as applied to her, violate her right to equal protection of the laws. Specifically, appellant relies upon *Trimble* v. *Gordon, supra,* and *Green*

**8**

v. *Woodard* (1974), 40 Ohio App. 2d 101, in support of her proposition that the Ohio intestacy laws invidiously discriminate against illegitimate children.

"In Ohio, a child born out of wedlock is capable of inheriting from and through his mother, R. C. 2105.17, but may inherit from his father only under certain circumstances. As pointed out in *Moore, supra,* the father may legitimatize an illegitimate child by afterwards marrying the mother of the illegitimate child and acknowledging the child as his. R. C. 2105.18. Further, the natural father of an illegitimate child may confer upon such child a right of inheritance from such father by several means: (1) by formal acknowledgement in Probate Court that the child is his with consent of the mother (R. C. 2105.18); (2) by designating the illegitimate child as his heir-at-law (R. C. 2105.15); (3) by adopting the illegitimate child; and (4) by making a provision for the child in his will.

"Appellant concededly cannot meet any of the above criteria. However, appellant contends that the equal protection clause requires that she be permitted to inherit from decedent if she can establish with sufficient competent evidence that decedent is, in fact, her father. In the cases considering this general issue before us, it has been rather uniformly pointed out that the rationality of the classification must be examined in light of the legitimate state purposes to which it is related.

"It has long been recognized in Ohio that proof of paternity, especially after the death of the alleged father, is difficult, and peculiarly subject to abuse. One of the resultants of such abuse would be the instability of land titles of real estate left by intestate fathers of illegitimate children.

"The Supreme Court of the United States had previously recognized the stability of land titles as constituting a substantial state interest in the cases of *Labine* v. *Vincent* (1971), 401 U. S. 532, and *Weber* v. *Aetna Casualty & Surety Co.* (1972), 406 U. S. 164. The Supreme Court reaffirmed this view in *Trimble, supra,* where in the opinion

of Mr. Justice Powell, at footnote 12, page 1464, is to be found the following:

"'* * * In *Weber* v. *Aetna Casualty & Surety Co.*, 406 U. S. 164, 92 S. Ct. 1400, 31 L. Ed. 2d 768 (1972), we found in *Labine* a recognition that judicial deference is appropriate when the challenged statute involves the "substantial state interest in providing for the stability of * * * land titles and in the prompt and definitive determination of the valid ownership of property left by decedents, * * *'' 406 U. S. at 170, 92 S. Ct., at 1404, quoting *Labine* v. *Vincent*, 229 So. 2d 449, 452 (La. App. 1969). We reaffirm that view, but there is a point beyond which such deference cannot justify discrimination. Although the proposition is self-evident, *Reed* v. *Reed*, 404 U. S. 71, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971), demonstrates that state statutes involving the disposition of property at death are not immunized from equal protection scrutiny. * * *'

"In *Trimble, supra*, the court struck down section 12 of the Illinois Probate Act which allowed an illegitimate child to inherit from his father only if the parents intermarried and the child was acknowledged by the father. The petitioner in *Trimble* had been previously adjudged to be the daughter of the decedent in an action for support brought during the decedent's lifetime. The court held that the statutorily excluded class under Illinois law was over-inclusive in failing to allow those persons with a prior adjudication or formal acknowledgment of paternity to inherit. The court pointed out that in effect the Illinois law excluded *all* illegitimate children from inheriting from their father in that the sole provision for their being able to inherit would entail the marriage of the parents, and acknowledgement of the child by the father, which acts would legitimatize the child.

"The Supreme Court, in *Trimble*, recognized a middle ground between the extremes of complete exclusion and case-by-case determination of paternity that could allowably be included within state legislation. The court stated as follows, at page 1465 of the opinion:

10

" 'The more serious problems of proving paternity might justify a more demanding standard for illegitimate children claiming under their fathers' estates than that required either for illegitimate children claiming under their mothers' estates or for legitimate children generally. We think, however, that the Illinois Supreme Court gave inadequate consideration to the relation between Section 12 and the State's proper objective of assuring accuracy and efficiency in the disposition of property at death. The court failed to consider the possibility of a middle ground between the extremes of complete exclusion and case-by-case determination of paternity. For at least some significant categories of illegitimate children of intestate men, inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws. Because it excludes those categories of illegitimate children unnecessarily, Section 12 is constitutionally flawed.'

"As noted, *Trimble, supra,* raised the question of whether the class which was discriminated against was over-inclusive in light of the avowed statutory purpose. The court answered in the affirmative. While we may envision situations in which persons placed within certain statutory classes may be victims of invidious discrimination, we do not believe that appellant has presented such a situation under the Ohio statutes in the case at bar.

"In conformity with the dictates of *Trimble,* we believe that the Ohio statutory provisions present a reasonable middle ground for the recognition of certain categories of illegitimate children of intestate men. Through these laws inheritance rights may be reasonably recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestate laws.

"Clearly, the Ohio classification scheme is rationally related to the legitimate state purpose of assuring efficient disposition of property at death while avoiding spurious claims. Moreover, the Ohio provisions do not discriminate between legitimate and illegitimate children *per se.* All

children may inherit from their mothers. Some illegitimate children and all legitimate children may inherit from their fathers. The group 'discriminated against' is that class of illegitimate children whose fathers did not formally acknowledge them or designate them as heirs-at-law, pursuant to R. C. 2105.18 or R. C. 2105.15.

"We conclude that the provisions of R. C. Chapter 2105, as applied to appellant, do not constitute invidious discrimination under the equal protection clause of the Fourteenth Amendment. * * *"

Subsequent to the decision of the Court of Appeals in the instant cause, the United States Supreme Court, in the case of *Lalli* v. *Lalli* (1978),    U. S.    , 58 L. Ed 2d 503, upheld the constitutionality of a New York statute which allowed illegitimate children to inherit from their father only if a court of competent jurisdiction, during the father's lifetime, entered an order declaring the child's paternity.

Recognizing the difficulty of proving paternity and the possibility of fraudulent assertions of paternity upon the estate of the decedent, the court found that the statutory differences afforded legitimate and illegitimate heirs under intestate succession were justified in furtherance of New York's substantial interest in the just and orderly disposition of property at death. In that regard, we conclude that the Ohio statutes in question in the cause at bar are substantially related to the important state interests discussed by the court in *Lalli, supra.*

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

PALMER, J., dissents.

PALMER, J., of the First Appellate District, sitting for HOLMES, J.

12

PALMER, J., dissenting. Because I can find no substantial basis for distinguishing the result reached by the United States Supreme Court in *Trimble* v. *Gordon* (1977), 430 U. S. 762, with respect to the Illinois Probate Act, from the case presented by R. C. Chapter 2105, I respectfully dissent.

In Illinois, the then Probate Act permitted an illegitimate child to inherit only from its mother, and not from its father, unless the father married the mother and acknowledged the child. The same options exist in this state, in disjunctive form, by virtue of R. C. 2105.18. In Illinois, *as in Ohio,* the father could frustrate the statute of intestate succession by making a will in favor of his illegitimate child. In Illinois, *as in Ohio,* the father could formally adopt the child, thus making him an heir at law with the same status as a legitimate child. Illinois Probate Act Section 14, recodified at Ill. Rev. Stat. Chapter 110 ½, Section 2-4 (effective January 1, 1976). The only significant difference I have been able to determine between the statutes of the two states is that Ohio provides one additional method by which the father may recognize his illegitimate child for purposes of intestate succession, *viz.,* through a formal proceeding in Probate Court, initiated by the father, to designate such child as his heir at law. R. C. 2105.15. Neither state, Illinois then and Ohio now, provides any method by which the *illegitimate child* may initiate any proceeding to secure parity of inheritance with legitimate children of his father.

Does the existence in this state of one more device than was provided in Illinois by which the father might, should he elect to do so, secure an inheritance for his illegitimate child, remove this case from the *Trimble* rule? I should not have thought so.

"By focusing on the steps that an intestate might have taken to assure some inheritance for his illegitimate children, the analysis loses sight of the essential question: the constitutionality of discrimination against illegitimates in a state intestate succession law. If the decedent had written a will devising property to his illegitimate child, the

case no longer would involve intestate succession law at all. Similarly, if the decedent had legitimated the child by marrying the child's mother *or by complying with the requirements of some other method of legitimation*, the case no longer would involve discrimination against illegitimates. Hard questions cannot be avoided by a hypothetical reshuffling of the facts." *Trimble* v. *Gordon, supra*, at page 774. (Emphasis added.)

The essential question posed by Mr. Justice Powell for the majority in the *Trimble* case remains, it seems to me, unanswered by the presence in Ohio of one additional hypothetical method of legitimation beyond that provided by Illinois.

The state concededly has a substantial interest in promoting the orderly administration of intestate estates, and, as the *Trimble* court noted, the "serious problems of proving paternity" might justify the creation, by statute, of relatively more demanding standards of proof for illegitimate children claiming under their fathers' estates. This consideration might, therefore, sustain an appropriate asymmetrical system of intestate devolution as one which "bear[s] some rational relationship to a legitimate state purpose," *Weber* v. *Aetna Casualty & Surety Co.* (1972), 406 U. S. 164, 172, where adequate consideration can be shown to have been given to the relationship between the statute of descent and distribution and the state's proper objective of assuring accuracy and efficiency in the disposition of the property of an intestate. The *Trimble* court suggested a middle ground between the extremes of complete exclusion and a case-by-case determination, since:

"For at least some significant categories of illegitimate children of intestate men, inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws. Because it excludes those categories of illegitimate children unnecessarily, §12 is constitutionally flawed." *Trimble* v. *Gordon, supra*, at page 771.

Such acceptable middle ground was found in *Lalli* v. *Lalli* (1978),     U. S.    , 58 L. Ed. 2d 503, where a New

York statute permitted an illegitimate child to secure, during the lifetime of his father, an order of filiation from a court of competent jurisdiction and thus to establish his right as an heir at law of his father. Finding no violation of the Equal Protection Clause, the *Lalli* court distinguished the *Trimble* case, where the statutes worked a total disinheritance of illegitimate children absent some voluntary act of the father:

"* * * The reach of the [Illinois] statute was far in excess of its justifiable purposes. Section 4-1.2 does not share this defect. Inheritance is barred only where there has been a failure to secure evidence of paternity during the father's lifetime in the manner prescribed by the State. This is not a requirement that inevitably disqualifies an unnecessarily large number of children born out of wedlock." *Lalli* v. *Lalli, supra*, 58 L. Ed. 2d, at page 514.

This state has no analogue to the New York statute, nor, so far as I can see, any other "middle ground" approach to the problem. I conclude, therefore, that so long as *Trimble* states the law of the land, the Ohio statute of descent and distribution violates the right of illegitimate children of intestate fathers to the equal protection of laws under the Fourteenth Amendment.